UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE HERNANDEZ, et al., | Case No.  11-cv-03085-JST |
| Plaintiffs, | |
| v. | **AMENDED[1] ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |
| COUNTY OF MARIN, et al., | |
| Defendants. | Re: ECF No. 80 |

In this action for claims under 42 U.S.C. § 1983, Defendants City of San Rafael, Twin Cities Police Authority, Officer Wanda Spaletta, and Officer Anthony Shaw, move for summary judgment.  Plaintiffs have not opposed the motion.  For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

## I.      BACKGROUND

**A.      The Parties and Claims**

Plaintiffs Jose Hernandez, Alma Hernandez, Scott Hernandez, and Josh Hernandez, bring this action on their own behalf and as guardians ad litem for T.H., a minor, against Defendants the City of San Rafael ("the City"), Twin Cities Police Authority, ("TCPA"), City Officer Wanda Spaletta, TCPA Officer Anthony Shaw, the County of Marin ("the County"), and County Officer Keith Boyd for claims arising out of the arrests of Jose, Scott, and Josh Hernandez on July 4, 2010.  Second Am. Compl. ("SAC"), ECF No. 40.

Plaintiffs assert the following claims against Defendants: (1) violations of California Civil Code Section 52.1; (2) violations of California Civil Code Section 51.7; (3) battery against Boyd and Shaw; (4) intentional infliction of emotional distress; (5) respondeat superior with respect to

---

[1] This order is amended to clarify the effect of the Court's rulings on the motion for summary judgment brought by the City and TCPA.  See Stipulated Request for Clarification, ECF No. 102.

the City and the County only; (6) violations of their rights under the Fourth and Fourteenth Amendments in violation of 42 U.S.C. § 1983 against the individual officers only; (7) false arrest; and (8) conspiracy.[2]

## B.    Undisputed Facts

At the time of the July 4, 2010, arrests, Jose lived in San Rafael, California, with his two sons, Josh and Scott; his wife, Alma; and his daughter, T.H.  Osman Decl., Ex. A, Jose Hernandez Dep. ("Jose Dep.") at 31.  On July 4, 2010, at approximately 9:30 a.m., Jose left his home in his Chevy pickup truck with his sons Josh and Scott with the intent of dropping off Josh at his place of employment in Corte Madera.  Scott sat in the front passenger seat and Josh sat behind Scott in the back seat.  Jose had recently had surgery on his knee and used a cane and a walker to assist him with walking.  Jose put his walker in the bed of the truck and his cane in the cab of the truck before starting to drive.  Jose Dep. at 26, 31, 59-62; Osman Decl., Ex. B, Scott Hernandez Dep. ("Scott Dep.") at 23, 43-45; Osman Decl., Ex. C, Joshua Hernandez Dep. ("Josh Dep.") at 7-8, 16-17, 48, 50, 52; Osman Decl., Ex. D, Alma Hernandez Dep. ("Alma Dep.") at 12; Osman Decl., Ex. E, T.H. Dep. ("T.H. Dep.") at 10, 65-68.

Before arriving at Josh's place of employment, Jose rear-ended a Toyota Corolla at an intersection.  After hitting the car, Jose exited his vehicle and approached the Corolla driver's side window to exchange information with the driver.  The driver of the Corolla and his passenger remained inside the car.  The driver of the Corolla said something to Jose about the laws in California and then drove away before Jose gave him his insurance information.  Jose Dep. at 64, 65-68, 72, 74; Scott Dep. at 48-57; Josh Dep. at 53-56.

Jose returned to his truck and resumed driving toward Corte Madera.  He noticed the Corolla driving in front of him.  The Corolla stopped in front of Jose's vehicle at the next red light. When the light turned green, Jose passed the Corolla and eventually lost sight of it.  Jose arrived at the Village shopping center in Corte Madera, the place where Joshed worked, and dropped off Josh.  Jose then started driving back to his house with Scott sitting in the passenger's seat.  Jose

---

[2] Plaintiffs bring claims against the individual officers both in their individual capacities and in their capacities as officers for the City and County.  SAC ¶ 5.

United States District Court
Northern District of California

1    Dep. at 70, 73-75, 79, 80, 84, 86-87; Scott Dep. at 53, 56, 58-64; Josh Dep. at 58, 61, 63.

2          At approximately 9:50 a.m., the driver of the Corolla, Emerson Reyes, contacted the San

3    Rafael Police Department and reported that he had just been involved in a shooting.  Reyes

4    advised dispatch that three men in a gray Chevrolet pickup truck shot at him following a minor

5    traffic collision.  Reyes also told dispatchers that the suspects fled southbound on Highway 101

6    and gave dispatchers the suspects' license plate number, which was registered to Jose Hernandez

7    at his home address.  Casalnuovo Decl. ¶¶ 2-4, ECF No. 80.

8          City Officers Hornstein and Casalnuovo went to Jose's home and told Alma that they were

9    looking for Jose because he had shot at someone on the street.  Alma told the officers that Jose left

10   their house a short time earlier and confirmed he was driving the gray Chevrolet pickup truck with

11   the license plate number reported by Reyes and that their son Josh was in the truck with him.  She

12   confirmed that Jose was driving towards Corte Madera.  Casalnuovo Declaration ¶ 6; Alma Dep.

13   at 29, 44-46; T.H. Dep. at 40-41, 45-47.

14         City dispatch advised officers over the radio that the Marin County Sheriff's Office had

15   located a possible match for Jose's truck in Corte Madera and that Sheriff's Deputies were

16   following it northbound on Highway 101.  Casalnuovo Decl. ¶ 7.  Officer Casalnuovo then saw

17   Jose driving directly in front of him and activated his emergency lights to make a "high-risk" stop

18   due to the suspected presence of a firearm in Jose's truck.  Casalnuovo also alerted another officer

19   that Jose was driving back to the residence.  Id. ¶¶ 8-9.

20         As Jose got closer to his house, he noticed several patrol cars but did not notice that the

21   cars' emergency lights were activated.  Jose Dep. at 91-92.  Jose realized that the cops were there

22   for him when he noticed that they were pointing their "pistols and rifles" at him.  Jose Dep. at 93.

23   Several police officers told him that they were going to kill him if he moved, and Jose became

24   frozen with fear.  Jose Dep. at 111-112.

25         When multiple police vehicles arrived at Jose's residence, Alma and T.H. ran out of the

26   house and towards the parking area where the police activity was occurring.  Officers pointed their

27   guns at Alma and T.H. and told them go back inside of the house or they would be shot.  Alma

28   and T.H. did not return to the house.  Alma testified that she became paralyzed with shock.  Jose

United States District Court
Northern District of California

3

1   Dep. at 122; Alma Dep. at 49-51, 110, 113; T.H. Dep. at 47- 49, 51, 57- 59, 61, 71.

2          Officers asked Scott, who was in the passenger's seat, if he was Josh.  Sargent Boyd and

3   Officer Casalnuovo then ordered Scott to get out of the truck. Casalnuovo Declaration ¶¶ 10-11.

4   Scott exited the truck with his hands raised and walked backward.  Scott Dep. at 76, 78-79, 82-83,

5   85-86, 125-126.  Boyd then threw Scott to the ground and pushed his face onto the cement.  Alma

6   Dep. at 61, 65, 67, 68.  As Boyd handcuffed Scott, Boyd told him to "get down on the ground, you

7   dirty Mexican."  Scott Dep. at 126.  Scott "just felt pain."  Id. at 79-80.  Alma then heard Boyd say

8   "damn Mexicans, now you are going back to your country."  Alma Dep. at 56.  While Scott was

9   on the ground, Scott told Boyd that his dad was "handicapped" and that he should "be careful"

10  with him.  Scott Dep. at 125.  Alma also told Boyd to be careful with Jose because Jose had just

11  had surgery on his knee.  Alma Dep. at 57.  When Boyd picked up Scott from the ground, Alma

12  noticed that Scott's face was scraped.  Alma Dep. at 70.

13         Officer Sabido ordered Jose out of the driver's seat.  Before Jose exited the car, he reached

14  for his cane because he could not walk without it but Boyd did not allow him to do so.  Instead,

15  Boyd pulled Jose out of the car, knocked him onto his knees, pushed his face onto the cement, put

16  his foot on Jose's back, and handcuffed him.  T.H. Dep. at 65-66; Alma Dep. at 57.  When Alma

17  remembered that Jose could become paralyzed "if his back was hurt," she became hysterical and

18  began to cry.  Alma Dep. at 71-72.  Jose felt pain while he was on the ground and felt that the

19  police had "beat[en] him up."  Jose Dep. at 88, 121, 126-127, 129-132, 137, 139-141, 199-201;

20  Alma Dep. at 65-66, 71-72, 75; T.H. Dep. at 65-55, 68-69.  Alma felt that Boyd was the "only one

21  that abused his strength."  Alma Dep. at 133.

22         While Jose was on the ground, he heard the cops say "words about Mexicans" in

23  connection with his family and noticed that the cops were "celebrating the whole thing."  Jose

24  Dep. at 120-122.  Alma also heard the officers say "[f]inally we are going to fuck this family" and

25  then saw them give each other high fives while laughing.  Alma Dep. at 72.  Several neighbors

26  witnessed the incident.  Jose Dep. at 123-124.

27         Boyd then pulled Jose up by the arms and took him to a patrol car.  Alma noticed that

28  Jose's face was bleeding.  Alma Dep. at 72; Casalnuovo Decl. ¶ 12; Jose Dep. at 8, 89-94, 111-

United States District Court
Northern District of California

4

113, 117; Scott Dep. at 64-66, 72, 74.

After Jose was in the police car, Jose and T.H saw the officers, including a woman officer, celebrating by giving each other high fives.  Jose Dep. at 146-47; T.H. Dep. at 75-77.  T.H. heard Officer Spaletta say "[w]e finally got these fucking dirty Mexicans."  T.H. Dep. at 75-77.  Alma felt "humiliated."  Alma Dep. at 72.

The officers placed bags over Jose and Scott's hands for gunshot-residue testing and transported them to the SRPD.  Jose and Scott were arrested for discharging a firearm at an occupied vehicle in violation of California Penal Code Section 246, assault with a deadly weapon in violation of California Penal Code Section 245(a)(1), and fighting in public in violation of California Penal Code Section 415(1).  Casalnuovo Decl. ¶¶ 14-17; Jose Dep. at 86, 150, 159; Scott Dep. at 97-98.

The SRPD dispatch then notified the TCPA that Josh was an outstanding suspect. Casalnuovo Decl. ¶ 13.  Two TCPA officers located Josh at his place of employment and asked him whether he was Josh, but he refused to answer.  The officers told Josh to put his hands on the back of his head.  Then, one of the officers hit Scott on the back of his head with handcuffs before handcuffing him.  Josh Dep. at 76.   Josh did not lose consciousness, bleed, or vomit as a result of being hit on the head, but he suffers from "head pain" caused by having been struck with handcuffs on the top of his head.  Josh Dep. at 28, 123.  The officers did not say anything to Josh between the time he put his hands on top of his head and when he was handcuffed.  One of the officers transported him to the City police department.  Josh Dep. at 28, 68-74, 76-80, 86, 123. Josh was arrested for violations of California Penal Code sections 246, 245(a)(1), and 415. Casalnuovo Decl. ¶ 18.

 After the arrests, T.H.'s grades worsened significantly and Alma had anxiety attacks and had to go to the emergency room.  T.H. Dep. at 37-38; Alma Dep. at 133.  Jose has testified that he "had no stress" and "was very happy" before the arrests but now he "feel[s] bad all the time" and remembers the incidents "all the time."  Jose Dep. at 127.

## C.     Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367.

United States District Court
Northern District of California

## II.   LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id. "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support

6

1    the complaint."  Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation

2    and internal quotation marks omitted).  If the non-moving party fails to make this showing, the

3    moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

4    (1986).

5                                    **III.    DISCUSSION**

6            Defendants the City, TCPA, Spaletta, and Shaw move for summary judgment with respect

7    to each of the claims Plaintiffs have asserted against them.[3]  They argue that summary judgment is

8    appropriate because the uncontroverted evidence establishes that the arrests were supported by

9    ample probable cause, the officers did not use unreasonable force against plaintiffs, there is no

10   evidence of discrimination, and the state law tort claims are unsupportable.

11           Plaintiffs filed a statement in lieu of an opposition stating that they "are unable to

12   effectively oppose" Defendants' motion and "can only protest the state of the law."  ECF No. 83.

13   While the Court may not grant Defendants' motion on the basis that it is unopposed, the Court

14   may grant the motion if Defendants' submissions are sufficient to support the motion and do not

15   reveal a genuine issue of material fact.  See Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir.

16   1993); see also Fed. R. Civ. P. 56 advisory committee's note ("Where the evidentiary matter in

17   support of the motion does not establish the absence of a genuine issue, summary judgment must

18   be denied even if no opposing evidentiary matter is presented.").

19   **A.    Claims Under 42 U.S.C. § 1983**

20           Jose, Scott, and Josh allege that Shaw and Spaletta violated their Fourth and Fourteenth

21   Amendment rights by (1) depriving them of liberty without due process, (2) discriminating against

22   them based on race, and (3) using excessive force against them.   SAC ¶¶ 53-54.

23           Shaw and Spaletta move for summary judgment on this claim, arguing that they are

24   protected from liability under 42 U.S.C. § 1983 by qualified immunity.  Defendants further argue

25   that in the event the Court finds that they are not protected by qualified immunity, Plaintiffs

26

27   _____

28   [3] For this reason, the Court considers only the allegations and facts pertaining to the claims that
     Plaintiffs have asserted against the City, TCPA, Shaw, and Spaletta for the purpose of resolving
     this motion.

United States District Court
Northern District of California

1   cannot meet their burden of proof on these claims in light of the undisputed evidence.

2       "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person

3   acting under color of state law committed the conduct at issue, and (2) that the conduct deprived

4   the claimant of some right, privilege, or immunity protected by the Constitution or laws of the

5   United States." Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).

6       Qualified immunity is an affirmative defense that "shied[s] an officer from personal

7   liability when an officer reasonably believes that his or her conduct complies with the law."

8   Pearson v. Callahan, 555 U.S. 223, 244 (2009).  "[I]n resolving a motion for summary judgment

9   based on qualified immunity, a court must carefully examine the specific factual allegations

10  against each individual defendant (as viewed in a light most favorable to the plaintiff)."

11  Cunningham v. Gates, 229 F.3d 1271, 1287 (9th Cir. 2000).

12      **1.      Deprivation of Liberty without Due Process in Violation of the Fourth**

13      **Amendment**

14      Jose, Scott, and Josh allege that Shaw and Spaletta deprived them of liberty without due

15  process in violation of the Fourth Amendment because they arrested them without probable cause

16  and kept them in jail for four days even though no charges ultimately were filed against them.

17  SAC ¶¶ 53-54, 65-67.

18      "When a law enforcement officer asserts qualified immunity from liability for Fourth

19  Amendment violations, the district court must determine whether, in light of clearly established

20  principles governing the conduct in question, the officer objectively could have believed that his

21  conduct was lawful." Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1092 (9th Cir. 1998)

22  (citation omitted).  An arrest is lawful under the Fourth Amendment when it is supported by

23  probable cause. See Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004) ("That a

24  police officer may arrest a suspect only if he has probable cause to believe a crime has been

25  committed is a bedrock Fourth Amendment precept.").  "Probable cause exists when under the

26  totality of circumstances known to the arresting officers, a prudent person would have concluded

27  that there was a fair probability that [the defendant] had committed a crime." Grant v. City of

28  Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002) (citation and internal quotation marks omitted).

United States District Court
Northern District of California

1    Here, the Court concludes that Shaw and Spaletta have qualified immunity with respect to

2    Plaintiffs' § 1983 claim for deprivation of liberty without due process, because Shaw and Spaletta

3    could have believed that their arrests of Jose, Scott, and Josh were lawful under the totality of the

4    circumstances test.  The undisputed facts show that the driver of the Corolla called the police

5    department, identified Jose's vehicle to dispatchers as having been involved in a road rage

6    incident, and told dispatchers that Jose had fired gunshots at his vehicle and that two other men

7    were in Jose's truck at the time Jose allegedly fired the gun shots.  Casalnuovo Decl. ¶¶ 2-4.

8    Additionally, prior to the executing the arrests, City police officers spoke with Alma to confirm

9    that Jose owned the truck with the license plate that the driver of the Corolla had identified.  In

10   light of this evidence, Shaw and Spaletta had probable cause to believe that Jose, Scott, and Josh

11   had committed a crime.  Accordingly, Shaw and Spaletta are entitled to summary judgment on

12   qualified immunity grounds with respect to this claim.

### 2.    Racial Discrimination in Violation of the Fourteenth Amendment

14   Plaintiffs allege that Shaw and Spaletta willfully deprived them of their "right to be free

15   from discrimination based on race, gender or disability" and their "right to equal protection of the

16   law."  SAC ¶¶ 54-55.  The Court interprets these allegations as pertaining to the racially

17   derogatory comments that Spaletta made after Jose and Scott were arrested by other officers.  See

18   T.H. Dep. at 75-77 (testifying that Spaletta said "[w]e finally got these fucking dirty Mexicans"

19   after Jose and Scott were arrested).

20   "Qualified immunity protects government workers from civil liability if their conduct does

21   not violate clearly established statutory or constitutional rights of which a reasonable person

22   would have known."  Cousins v. Lockyer, 568 F.3d 1063, 1069 (9th Cir.2009) (citation and

23   internal quotation marks omitted).   The question of whether Spaletta and Shaw are entitled to

24   qualified immunity with respect to this claim depends on whether their acts violated a clearly

25   established right under the Fourteenth Amendment.

26   The Court concludes that Spaletta is titled to qualified immunity with respect to this claim,

27   because racially derogatory statements by police officers, without more, do not rise to the level of

28   an established constitutional violation under the Fourteenth Amendment.  See, e.g., Oltarzewski v.

United States District Court
Northern District of California

1   Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) ("[V]erbal harassment or abuse . . . is not sufficient to

2   state a constitutional deprivation under 42 U.S.C. § 1983") (citation and internal quotation marks

3   omitted); El-Em Band of Pomo Indians of Sulphur Bank Rancheria v. 49th Dist. Agric. Fair Ass'n,

4   359 F. Supp. 1044, 1046 (N.D. Cal. 1973) (holding that "[p]aintiffs may have a right to be free

5   from" racially derogatory depictions "but this right is one of the many rights which are not

6   guaranteed by the Constitution of the United States").  Because Spaletta objectively could have

7   believed that her comments were lawful, Spaletta is entitled to summary judgment on qualified

8   immunity grounds with respect to this claim.

9        The Court also concludes that Shaw is entitled to summary judgment with respect to this

10   claim, as no evidence has been presented to show that he was present at the time Spaletta made the

11   derogatory comments at issue or that he committed any acts that could give rise to a § 1983 claim

12   based on violations of Plaintiffs' Fourteenth Amendment rights.  See Vance v. Peters, 97 F.3d

13   987, 991 (9th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and

14   predicated upon fault; thus, liability does not attach unless the individual defendant caused or

15   participated in a constitutional deprivation.").  Accordingly, Shaw's motion for summary

16   judgment on this claim is granted.

17       **3.**        **Excessive Force in Violation of the Fourth Amendment**

18        Jose, Scott, and Josh allege that Shaw and Spaletta used excessive force when arresting

19   them.  SAC ¶¶ 53-55.  Specifically, Josh alleges that Shaw struck him on the head with a pair of

20   handcuffs and yanked his arms behind his back before handcuffing him even though Josh did not

21   resist the arrest.  Id. ¶ 12.

22        "When a law enforcement officer asserts qualified immunity from liability for Fourth

23   Amendment violations, the district court must determine whether, in light of clearly established

24   principles governing the conduct in question, the officer objectively could have believed that his

25   conduct was lawful."  Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1092 (9th Cir. 1998).

26        The "use of excessive force in effecting an arrest is a clearly established violation of the

27   Fourth Amendment[.]"  Id.  "[T]he test for qualified immunity in excessive force cases is the same

28   as the test on the merits."  Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000) (citation

United States District Court
Northern District of California

10

1    omitted).  "Under the Fourth Amendment, police may use only such force as is objectively

2    reasonable under the circumstances."  Id. (citation omitted).  "Determining whether force used in

3    making an arrest is excessive or reasonable requires careful attention to the facts and

4    circumstances of each particular case, including the severity of the crime at issue, whether the

5    suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

6    resisting arrest or attempting to evade arrest by flight."  Id. (citation and internal quotation marks

7    omitted).  This entails a highly factual inquiry that "nearly always requires a jury to sift through

8    disputed factual contentions, and to draw inferences therefrom."  Santos v. Gates, 287 F.3d 846,

9    853 (9th Cir. 2002).  "Summary judgment or judgment as a matter of law in excessive force cases

10   should be granted sparingly . . . because police misconduct cases almost always turn on a jury's

11   credibility determinations."  Id. (citation omitted).

12            The Court concludes that Shaw's motion for summary judgment on Josh's excessive force

13   claim must be denied, because Shaw has neither produced evidence to negate an essential element

14   of Josh's excessive force claim nor shown that Josh does not have enough evidence to prove that

15   the contact at issue was excessive.  First, Defendants argue that the hit that Josh suffered was

16   "nothing more than negligence" because he did not bleed or vomit following the incident.  The

17   question of whether this contact constitutes excessive force turns on the jury's credibility

18   determinations.  Defendants have produced transcripts of Josh's deposition, which establishes that

19   Josh continues to suffer from "head pain" caused by having been struck with handcuffs on the top

20   of his head.  Josh Dep. at 28, 123.  In light of this evidence, a reasonable jury could find that Shaw

21   used excessive force when arresting Josh.  Second, Defendants argue that "Plaintiffs' deposition

22   testimony in fact does not specifically attribute any conduct to Officer Shaw."  Mot. at 11.  This

23   argument is insufficient to show that Shaw is entitled to summary judgment on this claim, because

24   the argument does not establish that Josh would not be able to meet his burden of persuasion at

25   trial with respect to the identity of the officer who struck him.  See Nissan Fire & Marine Ins. Co.

26   v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000) ("Where the party moving for summary

27   judgment would not bear the burden of proof at trial, that party bears the initial burden of either

28   producing evidence that negates an essential element of the non-moving party's claim, or showing

1   that the non-moving party does not have enough evidence of an essential element to carry its

2   ultimate burden of persuasion at trial.").

3        On the other hand, the Court concludes that Spaletta is entitled to summary judgment with

4   respect to Plaintiffs' excessive force claim, as no evidence has been presented showing that she

5   had any physical contact with any of the Plaintiffs.  See Alma Depo. at 70, 75, 133; see also Vance

6   v. Peters, 97 F.3d 987, 991 (9th Cir. 1996) ("Section 1983 creates a cause of action based on

7   personal liability and predicated upon fault; thus, liability does not attach unless the individual

8   defendant caused or participated in a constitutional deprivation.").

9   **B.    California Civil Code Section 52.1**

10       Plaintiffs allege that Defendants "interfered" with their rights under the Constitutions of

11  California and the United States "by means of intimidation, coercion, threats and violence."  SAC

12  ¶ 22.  The Court interprets this claim as being premised on Shaw and Spaletta's alleged violations

13  of Plaintiffs' rights under the Fourth and Fourteenth Amendments, as discussed above.

14       California Civil Code Section 52.1 provides a claim for relief "against anyone who

15  interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or

16  enjoyment of rights secured by federal or state law." Jones v. Kmart Corp., 17 Cal.4th 329, 331

17  (Cal. 1998).  Liability under this section, however, "does not extend to all ordinary tort actions

18  because its provisions are limited to threats, intimidation, or coercion that interferes with a

19  constitutional or statutory right."  Venegas v. Cnty. of Los Angeles, 32 Cal. 4th 820, 843 (Cal.

20  2004).

21       When a claim under Section 52.1 is premised on the violation of a right guaranteed by the

22  United States Constitution, courts in the Ninth Circuit look to the elements of the constitutional

23  claim to determine whether the Section 52.1 claim is meritorious.  See Cameron v. Craig, 713 F.3d

24  1012, 1022 (9th Cir. 2013) ("[Plaintiff] asserts no California right different from the rights

25  guaranteed under the Fourth Amendment, so the elements of the excessive force claim under §

26  52.1 are the same as under § 1983.")

27       Here, Shaw's summary judgment motion with respect to Josh's excessive force claim has

28  been denied; accordingly, his motion for summary judgment with respect to the Section 52.1

United States District Court
Northern District of California

12

1    claim, which is premised on the same alleged conduct and constitutional deprivations, also must

2    be denied.

3        On the other hand, Spaletta's motion for summary judgment on Plaintiffs' claim for

4    violations of the Fourteenth Amendment has been granted; accordingly, her summary judgment

5    motion with respect to the Section 52.1 claim, which is premised on the same alleged conduct and

6    constitutional deprivations, also must be granted.

7    **C.    California Civil Code Section 51.7**

8        Plaintiffs allege that Defendants violated their right under California Civil Code Section

9    51.7 to be free from violence or intimidation by threat of violence on the basis of their race, color,

10    or ancestry.  SAC ¶¶ 25-27.  This claim is premised on allegations that the arrests of Jose, Scott,

11    and Josh and the treatment that each of them received during the arrests were motivated by racial

12    animus and a "desire to get [Plaintiffs] out of the country on account of their race."  Id. ¶ 26.

13        Section 51.7 grants the "right to be free from any violence, or intimidation by threat of

14    violence, committed" against "persons or property" based a characteristic such as sex, race, color,

15    religion, ancestry, national origin, disability, medical condition, marital status, or sexual

16    orientation.  Cal. Civ. Code § 51.7(b), (e).

17        The Court concludes that Shaw's motion for summary judgment on this claim must be

18    granted, because no evidence has been presented showing that Shaw's actions, namely his alleged

19    use of excessive force against Josh, was motivated by Josh's race, color, or ancestry.  See Gomez

20    v. City of Fremont, 730 F. Supp. 2d 1056, 1069 (N.D. Cal. 2010) (granting summary judgment on

21    Section 51.7 claim because the plaintiff "had only a subjective belief, and not any evidence, that

22    [the defendants] were motived by his ethnicity").

23        The Court also concludes that Spaletta's motion for summary judgment on this claim must

24    be granted, because there no evidence has been presented showing that Spaletta committed an act

25    of violence or threatened violence against Plaintiffs.

26    **D.    Battery**

27        Josh alleges that Shaw used excessive force when arresting him despite his "lack of

28    resistance and complete cooperation" during the arrest.  SAC ¶¶ 29-30.

United States District Court
Northern District of California

13

1  "In order to prevail on a claim of battery against a police officer, the plaintiff bears the

2  burden of proving the officer used unreasonable force."  Munoz v. City of Union City, 16 Cal.

3  Rptr. 3d 521, 539 (Cal. Ct. App. 2004).  "Claims that police officers used excessive force in the

4  course of an arrest, investigatory stop or other seizure of a free citizen are analyzed under the

5  reasonableness standard of the Fourth Amendment to the United States Constitution."  Id. (citation

6  and internal quotation marks omitted).

7  Here, Shaw's motion for summary judgment on this claim fails for the same reasons that

8  his motion for summary judgment on Josh's § 1983 claim for excessive force fails, as both claims

9  are analyzed under the reasonableness standard of the Fourth Amendment.  Accordingly, Shaw's

10  motion for summary judgment on this claim must be denied.

**E.    Intentional Infliction of Emotional Distress**

12  Plaintiffs allege that Defendants acted with the intent to inflict severe mental, physical, and

13  emotional distress upon them and that they suffered severe emotional distress because of

14  Defendants' conduct in executing the arrests of Jose, Scott, and Josh.  SAC ¶¶ 33-34.

15  "Under California law, the elements of intentional infliction of emotional distress ("IIED")

16  are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless

17  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

18  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

19  defendant's outrageous conduct."  Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996)

20  (citation omitted).  "In order to be considered outrageous, the conduct must be so extreme as to

21  exceed all bounds of that usually tolerated in a civilized community."  Tekle v. United States, 511

22  F.3d 839, 855 (9th Cir. 2007) (citation and internal quotation marks omitted).  "Where reasonable

23  persons may differ, the trier of fact is to determine whether the conduct has been sufficiently

24  extreme and outrageous to result in liability."  Id. (citation and internal quotation marks omitted).

25  Shaw and Spaletta move for summary judgment on this claim on the basis that (1) "Jose,

26  Scott and Josh's arrests were supported by ample probable cause and lawful" and therefore cannot

27  form the basis of any IIED claim; (2) the officers' acts of pointing guns at Alma and T.H. cannot

28  form the basis for any IIED claim because neither Officer Spaletta nor Officer Shaw pointed their

1    weapons at Alma or T.H; (3) "Spaletta did not use any force against Jose or Scott and she was not

2    present at Josh's arrest"; and (4) "Spaletta's alleged comment 'we got these dirty Mexicans' and

3    celebrating Jose and Scott's arrests does not support an IIED claim" because "[t]he evidence fails

4    to show her statement was intended to injure plaintiffs." Mot. at 22-23.

5           The Court concludes that Shaw's motion for summary judgment on this claim must be

6    granted because no evidence has been presented showing that Josh or any of the other Plaintiffs

7    suffered severe emotional distress as a result of Shaw's conduct.

8           On the other hand, the Court concludes that Spaletta's motion for summary judgment on

9    this claim must be denied.   The undisputed facts show that Spaletta made a racially derogatory

10   comment about Plaintiffs' nationality and race within the view and earshot of the Plaintiffs and

11   several of their neighbors, and that Alma, T.H., and Jose suffered severe emotional distress as a

12   result of this conduct and the arrests that took place at their residence.  See T.H. Dep. at 37-38;

13   Alma Dep. at 133; Jose Dep. at 123-24, 127.  In light of this evidence, a reasonable juror could

14   conclude that Spaletta's racially derogatory comment and subsequent celebration of the arrest of

15   Jose and Scott constitutes extreme and outrageous conduct intended to cause Plaintiffs to suffer

16   severe emotional distress.  See Tekle v. United States, 511 F.3d 839, 856 (9th Cir. 2007)

17   (reversing grant of summary judgment on claim for intentional infliction of emotional distress

18   because "reasonable minds could differ as to whether the conduct alleged here by [the plaintiff]

19   was sufficiently extreme and outrageous" in part because the plaintiff "testified that an officer

20   made disparaging remarks about Ethiopia" after the officer arrested the plaintiff's father); Alcorn

21   v. Anbro Engineering, Inc., 86 Cal. Rptr. 88, 89 (Cal. 1970) (holding that a racial insult is an

22   aggravating factor in finding outrageous conduct in situations where the defendant "stand[s] in a

23   position or relation of authority over plaintiff"); Steiner v. Showboat Operating Co., 25 F.3d 1459,

24   1466 (9th Cir. 1994) ("[W]here there is public humiliation it is much more likely that the [IIED]

25   action will lie.").

26   **F.    False Arrest or Imprisonment**

27          Plaintiffs allege that the arrests of Jose, Scott, and Josh were unlawful because Defendants

28   did not have an arrest warrant or probable cause to arrest them.  SAC ¶¶ 64-67.

United States District Court
Northern District of California

1    Shaw and Spaletta argue that they are entitled to summary judgment on this claim because

2    officers cannot be held civilly liable for false imprisonment where the officer, "acting within the

3    scope of his or her authority," made a "lawful" arrest or "had reasonable cause to believe the arrest

4    was lawful."  Mot. at 23 (citing Cal. Penal Code § 847(b)).

5    Here, as discussed above, the Court has concluded that Defendants had probable cause to

6    execute the arrests at issue.  Because the arrests are lawful, Shaw and Spaletta cannot be held

7    liable for false arrest.  Accordingly, their motion for summary judgment on this claim is granted.

8    **G.    Immunity under California Government Code Sections 820.2 and 815.2**

9    Defendants Shaw, Spaletta, and the City argue that they are immune from liability for the

10   claims that Plaintiffs have asserted against them.  Specifically, they contend that Shaw and

11   Spaletta are immune from Plaintiffs' claims under California Government Code Section 820.2 and

12   that the City is immune under California Government Code Section 815.2.

13   **1.    Section 820.2**

14   The general rule in California is that "public employees are liable for their torts unless a

15   statute provides otherwise."  Barner v. Leeds, 24 Cal. 4th 676, 683 (Cal. 2000).  An exception to

16   this rule is contained in California Government Code Section 820.2, which provides absolute

17   immunity for "discretionary acts" performed by public officers and employees.  Caldwell v.

18   Montoya, 10 Cal. 4th 972, 989 (Cal. 1995).  In determining whether acts are "discretionary" for

19   the purpose of Section 820.2 immunity, California courts have distinguished between "policy"

20   decisions for which immunity is bestowed, and "operational" decisions, for which immunity is not

21   granted.  See Barner v. Leeds, 24 Cal. 4th 676, 684-85 (Cal. 2000).  Policy decisions are "basic

22   policy decisions [which have] . . . been [expressly] committed to coordinate branches of

23   government, and as to which judicial interference would thus be unseemly."  Id. at 685 (citations

24   and internal quotation marks omitted).  Operational decisions, on the other hand, are duties that

25   "are incident to the normal functions of the" public employee.  Id. at 688.

26   Here, the only claims asserted against Shaw and Spaletta that have survived their motions

27   for summary judgment are the claims for excessive force under § 1983 and Section 52.1 and for

28   battery against Shaw, and the claim for intentional infliction of emotional distress against Spaletta.

United States District Court
Northern District of California

The Court concludes that Shaw and Spaletta's motions for summary judgment on the ground of Section 820.2 immunity must be denied with respect to these surviving claims because the acts giving rise to those claims are not "policy decisions" to which immunity under Section 820.2 applies.  See Blankenhorn v. City of Orange, 485 F.3d 463, 487 (9th Cir. 2007) (holding that Section 820.2 "applies to police officers' discretionary decisions made during arrests.  But it has long been established that this provision does not apply to officers who use unreasonable force in making an arrest."); Faurie v. Berkeley Unified Sch. Dist., Case No. 08-cv-0060 TEH, 2008 WL 820682, at *13 (N.D. Cal. Mar. 26, 2008) ("Harassment and intentional infliction of emotional distress through harassment are not 'basic policy decisions' which fall within the scope of § 820.2.").

**2.     Section 815.2**

Plaintiffs allege that the City and County are liable under the doctrine of respondeat superior with respect to the claims they have asserted against Spaletta and Shaw for battery, intentional infliction of emotional distress, and Section 52.1 and Section 51.7 violations.  SAC ¶¶ 50-52.

Defendants the City and TCPA move for summary judgment on this claim on the ground that "Plaintiffs' respondeat superior claims against the City for Officer Spaletta's alleged conduct and claims against TCPA for Officer Shaw's alleged conduct fail for the same reasons the claims against the individual officers fail."  Mot. at 23.

Section 815.2 provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't Code § 815.2(a).

Here, the City has provided no evidence to show that Shaw or Spaletta acted outside of the scope of their employment with respect to the claims at issue.  For this reason, the City can be held liable under Section 815.2 for any claim for which Spaletta and Shaw can be held liable.  Accordingly, the City and TCPA's motion for summary judgment on the respondeat superior claim is granted with respect to any claim on which either Spaletta or Shaw have been granted

17

summary judgment, but it is denied with respect to any claim on which Spaletta or Shaw have been denied summary judgment.

## IV.    CONCLUSION

Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART as follows:

1.    Shaw, Spaletta, the City, and TCPA's motion for summary judgment with respect to Plaintiffs' § 1983 claim for violations of their Fourth Amendment rights in connection with a wrongful arrest is GRANTED.

2.    Shaw, Spaletta, the City, and TCPA's motion for summary judgment with respect to Plaintiffs' § 1983 claim for violations of their Fourteenth Amendment rights in connection with racial derogatory comments is GRANTED.

3.    Shaw and TCPA's motion for summary judgment with respect to Plaintiffs' § 1983 claim for violations of their Fourth Amendment rights in connection with the use of excessive force is DENIED.

4.    Spaletta and the City's motion for summary judgment with respect to Plaintiffs' § 1983 claim for violations of their Fourth Amendment rights in connection with the use of excessive force is GRANTED.

5.    Shaw and TCPA's motion for summary judgment with respect to Plaintiffs' claim under California Civil Code Section 52.1 is DENIED.

6.    Spaletta and the City's motion for summary judgment with respect to Plaintiffs' claim under California Civil Code Section 52.1 is GRANTED.

7.    Shaw, Spaletta, the City, and TCPA's motion for summary judgment with respect to Plaintiffs' claim under California Civil Code Section 51.7 is GRANTED.

8.    Shaw and TCPA's motion for summary judgment with respect to Plaintiffs' battery claim is DENIED.

9.    Shaw and TCPA's motion for summary judgment with respect to Plaintiffs' claim for intentional infliction of emotional distress is GRANTED.

//

United States District Court
Northern District of California

10. Spaletta and the City's motion for summary judgment with respect to Plaintiffs' claim for intentional infliction of emotional distress is DENIED.

11. Shaw, Spaletta, the City, and TCPA's motion for summary judgment with respect to Plaintiffs' claim for false arrest is GRANTED.

12. The City and TCPA's summary judgment motion with respect to Plaintiffs' respondeat superior claim is GRANTED with respect to each of the claims on which the Court has granted summary judgment to either Spaletta or Shaw, and it is otherwise DENIED, as itemized above.

A case management conference will be held on September 10, 2013.

**IT IS SO ORDERED**.

Dated:  August 19, 2013

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California