UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE HERNANDEZ, et al.,

        Plaintiffs,

    v.

COUNTY OF MARIN, et al.,

        Defendants.

Case No.  11-cv-03085-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 87

In this action for claims under 42 U.S.C. § 1983, Defendants the County of Marin ("the County") and County Officer Keith Boyd move for summary judgment. Plaintiffs have not opposed the motion. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

I.      **BACKGROUND**

    A.     **The Parties and Claims**

Plaintiffs Jose Hernandez, Alma Hernandez, Scott Hernandez, and Josh Hernandez, bring this action on their own behalf and as guardians ad litem for T.H., a minor, against Defendants the City of San Rafael ("the City"), Twin Cities Police Authority, ("TCPA"), City Officer Wanda Spaletta, TCPA Officer Anthony Shaw, the County of Marin ("the County"), and County Officer Keith Boyd for claims arising out of the arrests of Jose, Scott, and Josh on July 4, 2010. Second Am. Compl. ("SAC"), ECF No. 40.

Plaintiffs assert the following claims in the operative complaint: (1) violations of California Civil Code Section 52.1 against all Defendants; (2) violations of California Civil Code Section 51.7 against all Defendants; (3) battery against Boyd and Shaw only; (4) intentional infliction of emotional distress against all Defendants; (5) respondeat superior against the City and

County only with respect to each of the claims asserted; (6) violations of their rights under the Fourth and Fourteenth Amendments in violation of 42 U.S.C. § 1983 against the individual Defendants only; (7) false arrest against the individual Defendants only; and (8) conspiracy against all Defendants.[1]

**B.    Undisputed Facts[2]**

At the time of the July 4, 2010, arrests, Jose lived in San Rafael, California, with his two sons, Josh and Scott; his wife, Alma; and his daughter, T.H.  Jose Hernandez Dep. ("Jose Dep.") at 31, Osman Decl., Ex. A, ECF No. 80.  On July 4, 2010, at approximately 9:30 a.m., Jose left his home in his Chevy pickup truck with his sons Josh and Scott with the intent of dropping off Josh at his place of employment in Corte Madera.  Scott sat in the front passenger seat and Josh sat behind Scott in the back seat.  Jose had recently had surgery on his knee and used a cane and a walker to assist him with walking.  Jose put his walker in the bed of the truck and his cane in the cab of the truck before starting to drive.  Jose Dep. at 26, 31, 59-62; Osman Decl., Ex. B, Scott Hernandez Dep. ("Scott Dep.") at 23, 43-45; Osman Decl., Ex. C., Joshua Hernandez Dep. ("Josh Dep.") at 7-8, 16-17, 48, 50, 52; Osman Decl., Ex. D, Alma Hernandez Dep. ("Alma Dep.") at 12; Osman Decl., Ex. E, T.H. Dep. ("T.H. Dep.") at 10, 65-68.

Before arriving at Josh's place of employment, Jose rear-ended a Toyota Corolla at an intersection.  After hitting the car, Jose exited his vehicle and approached the Corolla driver's side window to exchange information with the driver.  The driver of the Corolla and his passenger remained inside the car.  The driver of the Corolla said something to Jose about the laws in California and then drove away before Jose gave him his insurance information.  Jose Dep. at 64,

---

[1] Plaintiffs bring claims against the individual officers both in their individual capacities and in their capacities as officers for the City and County.  SAC ¶ 5.

[2] Many of the facts in this section are derived from materials filed by Defendants the City, TCPA, Shaw, and Spaletta in connection with their motions for summary judgment, which were resolved in an order issued on August 2, 2013.  See ECF Nos. 80, 99.  The Court may consider these facts when determining the motions for summary judgment filed by the County and Boyd.  See Fed. R. Civ. P. 56(c)(B)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

United States District Court
Northern District of California

United States District Court
Northern District of California

65-68, 72, 74; Scott Dep. at 48-57; Josh Dep. at 53-56.

Jose returned to his truck and resumed driving toward Corte Madera.  He noticed the Corolla driving in front of him.  The Corolla stopped in front of Jose's vehicle at the next red light.  When the light turned green, Jose passed the Corolla and eventually lost sight of it.  Jose arrived at the Village shopping center in Corte Madera, the place where Joshed worked, and dropped off Josh.  Jose then started driving back to his house with Scott sitting in the passenger's seat.  Jose Dep. at 70, 73-75, 79, 80, 84, 86-87; Scott Dep. at 53, 56, 58-64; Josh Dep. at 58, 61, 63.

At approximately 9:50 a.m., the driver of the Corolla, Emerson Reyes, contacted the San Rafael Police Department and reported that he had just been involved in a shooting.  Reyes advised dispatch that three men in a gray Chevrolet pickup truck shot at him following a minor traffic collision.  Reyes also told dispatchers that the suspects fled southbound on Highway 101 and gave dispatchers the suspects' license plate number, which was registered to Jose Hernandez at his home address.  Casalnuovo Decl. ¶¶ 2-4, ECF No. 80.

City Officers Hornstein and Casalnuovo went to Jose's home and told Alma that they were looking for Jose because he had shot at someone on the street.  Alma told the officers that Jose left their house a short time earlier and confirmed he was driving the gray Chevrolet pickup truck with the license plate number reported by Reyes and that their son Josh was in the truck with him.  She confirmed that Jose was driving towards Corte Madera.  Casalnuovo Decl. ¶ 6; Alma Dep. at 29, 44-46; T.H. Dep. at 40-41, 45-47.

County Sargent Boyd received a dispatch from the City of Rafael stating that Reyes had called in to report a road rage incident in which occupants of a truck rear-ended his vehicle, challenged him to a fight, and fired a gun at his car.  Boyd Decl. ¶ 2, ECF No. 91.  According to the dispatch, Perez reported that the truck was occupied by the driver and two passengers, identified the color and make of the truck, and provided a license plate number, which was registered to Jose at an address in San Rafael.  Id. ¶ 3.  Boyd then received another dispatch, in which he was told that another officer had located Jose's vehicle on northbound 101 at Sir Francis Drake Boulevard.  Id. ¶ 5.  Boyd responded that he was en-route to assist.  Id.  Dispatch then

advised Boyd that Jose's truck had exited the freeway and that the truck was bound for Jose's residence.  Id. ¶ 6.

City dispatch advised City officers over the radio that the Marin County Sheriff's Office had located a possible match for Jose's truck in Corte Madera and that Sheriff's Deputies were following it northbound on Highway 101.  Casalnuovo Decl. ¶ 7.  Officer Casalnuovo then saw Jose driving directly in front of him and activated his emergency lights to make a "high-risk" stop due to the suspected presence of a firearm in Jose's truck.  Casalnuovo also alerted another officer that Jose was driving back to the residence.  Id. ¶¶ 8-9.

As Jose got closer to his house, he noticed several patrol cars but did not notice that the cars' emergency lights were activated.  Jose Dep. at 91-92.  Jose realized that the cops were there for him when he noticed that they were pointing their "pistols and rifles" at him.  Jose Dep. at 93.  Several police officers told him that they were going to kill him if he moved, and Jose became frozen with fear.  Jose Dep. at 111-112.

When multiple police vehicles arrived at Jose's residence, Alma and T.H. ran out of the house and towards the parking area where the police activity was occurring.  Officers pointed their guns at Alma and T.H. and told them go back inside of the house or they would be shot.  Alma and T.H. did not return to the house.  Alma testified that she became paralyzed with shock.  Jose Dep. at 122; Alma Dep. at 49-51, 110, 113; T.H. Dep. at 47- 49, 51, 57- 59, 61, 71.

Officers asked Scott, who was in the passenger's seat, if he was Josh.  Sargent Boyd and Officer Casalnuovo then ordered Scott to get out of the truck.  Casalnuovo Decl. ¶¶ 10-11.  Scott exited the truck with his hands raised and walked backward.  Scott Dep. at 76, 78-79, 82-83, 85-86, 125-126.  Boyd then threw Scott to the ground and pushed his face onto the cement.  Alma Dep. at 61, 65, 67, 68.  The impact caused Scott's braces to cut the inside of his mouth, which in turn caused his lip to become sore but not swollen.  Scott Dep. at 105.  As Boyd handcuffed Scott, Boyd told him to "get down on the ground, you dirty Mexican."  Scott Dep. at 126.  After hearing this, Scott "fe[lt] like trash" because "an officer [was] doing it."  Scott Dep. at 127, Brewer Decl., Ex. C, ECF No. 88.  He also "just felt pain."  Id. at 79-80.  Alma then heard Boyd say "damn

Mexicans, now you are going back to your country."  Alma Dep. at 56.  While Scott was on the ground, Scott told Boyd that his dad was "handicapped" and that he should "be careful" with him. Scott Dep. at 125.  Alma also told Boyd to be careful with Jose because Jose had just had surgery on his knee.  Alma Dep. at 57.  When Boyd picked up Scott from the ground, Alma noticed that Scott's face was scraped.  Alma Dep. at 70.

Officer Sabido ordered Jose out of the driver's seat.  Before Jose exited the car, he reached for his cane because he could not walk without it but Boyd did not allow him to do so.  Instead, Boyd pulled Jose out of the car, knocked him onto his knees, pushed his face onto the cement, put his foot on Jose's back, and handcuffed him.  T.H. Dep. at 65-66; Alma Dep. at 57.  Jose testified that the officer who got him out of his car "twisted [his] arm" and "threw [him] down, and "did not care" that he "was not able to walk."  Jose Dep. at 131, Brewer Decl., Ex. C, ECF No. 88. When Alma remembered that Jose could become paralyzed "if his back was hurt," she became hysterical and began to cry.  Alma Dep. at 71-72.  Jose felt pain while he was on the ground and felt that the police had "beat[en] him up."  Jose Dep. at 88, 121, 126-127, 129-132, 137, 139-141, 199-201; Alma Dep. at 65-66, 71-72, 75; T.H. Dep. at 65-55, 68-69.  Alma felt that Boyd was the "only one that abused his strength."  Alma Dep. at 133.

While Jose was on the ground, he heard the cops say "words about Mexicans" in connection with his family and noticed that the cops were "celebrating the whole thing."  Jose Dep. at 120-122.  Alma also heard the officers say "[f]inally we are going to fuck this family" and then saw them give each other high fives while laughing.  Alma Dep. at 72.  Several neighbors witnessed the incident.  Jose Dep. at 123-124.

Boyd then pulled Jose up by the arms and took him to a patrol car.  Alma noticed that Jose's face was bleeding.  Alma Dep. at 72; Casalnuovo Decl. ¶ 12; Jose Dep. at 8, 89-94, 111-113, 117; Scott Dep. at 64-66, 72, 74.

Jose and T.H saw the officers, including a woman officer, celebrating by giving each other high fives.  Jose Dep. at 146-47; T.H. Dep. at 75-77.  T.H. heard Officer Spaletta say "[w]e finally got these fucking dirty Mexicans."  T.H. Dep. at 75-77.  Alma felt "humiliated."  Alma Dep. at 72.

The officers placed bags over Jose and Scott's hands for gunshot-residue testing and transported them to the SRPD. Jose and Scott were arrested for discharging a firearm at an occupied vehicle in violation of California Penal Code Section 246, assault with a deadly weapon in violation of California Penal Code Section 245(a)(1), and fighting in public in violation of California Penal Code Section 415(1). Casalnuovo Decl. ¶¶ 14-17; Jose Dep. at 86, 150, 159; Scott Dep. at 97-98.

The SRPD dispatch then notified the TCPA that Josh was an outstanding suspect. Casalnuovo Decl. ¶ 13. Two TCPA officers located Josh at his place of employment and asked him whether he was Josh, but he refused to answer. The officers told Josh to put his hands on the back of his head. Then, one of the officers hit Scott on the back of his head with handcuffs before handcuffing him. Josh Dep. at 76. Josh did not lose consciousness, bleed, or vomit as a result of being hit on the head, but he suffers from "head pain" caused by having been struck with handcuffs on the top of his head. Josh Dep. at 28, 123. The officers did not say anything to Josh between the time he put his hands on top of his head and when he was handcuffed. One of the officers transported him to the City police department. Josh Dep. at 28, 68-74, 76-80, 86, 123. Josh was arrested for violations of California Penal Code sections 246, 245(a)(1), and 415. Casalnuovo Decl. ¶ 18.

When Jose was first put into custody, he "had pain" but "didn't tell [the officers]" because he "was very confused." Jose Dep. at 158, Brewer Decl., Ex. C, ECF No. 88. Eventually, Jose told the officers that he was in pain, but "they did not want to pay attention to it." Jose Dep. at 166, Brewer Decl., Ex. C, ECF No. 88. Jose testified that he felt "stabbing pain" in his knees following the incident, which went away in about six days; that he felt "face pain," which went away in three or four days, and that he felt shoulder pain, which went away in about six or seven days. Jose Dep. at 165-66, Brewer Decl., Ex. C, ECF No. 88. Jose saw one doctor after he got out of jail but did not see any psychologist or psychiatrist after his arrest. Jose Dep. at 168, Brewer Decl., Ex. C, ECF No. 88. Jose, however, had seen a psychiatrist or a psychologist once before the arrest. Id. at 51.

1      After the arrests, T.H.'s grades worsened significantly and Alma had anxiety attacks and

2   had to go to the emergency room.  T.H. Dep. at 37-38; Alma Dep. at 133.  Jose has testified that

3   he "had no stress" and "was very happy" before the arrests but now he "feel[s] bad all the time"

4   and remembers the incidents "all the time."  Jose Dep. at 127.  Jose also feels "this terrible fear

5   that [he] is going to be locked up" when he "see[s] the police."  Jose Dep. at 168, Brewer Decl.,

6   Ex. C, ECF No. 88.

7      The parties stipulated to an Independent Medical Examination of Jose, which took place on

8   Mary 14, 2013.  Brewster Decl., Ex. D, ECF No. 88.  The examination, which was characterized

9   as a "non-invasive orthopedic examination" to evaluate the "alleged injury" caused by the arrest to

10  Jose's knee, back, and shoulder, was performed by Dr. Robert Z. Bruckman.   Brewster Decl., Ex.

11  D at 2, ECF No. 88.  Bruckman opines that "[t]here is no indication that [Jose's] back was injured

12  in the 7/4/10 arrest," and that "[t]here are no signs that there has been any injury to the right

13  shoulder during the 7/4/10 incident."  Bruckman Decl., Ex. B at 13.  Bruckman further opines that

14  "an interview, physical examination and the medical record clearly demonstrate that there have

15  been no complaints of, or evidence of, any physical ill effects of the arrest of 7/4/10."  <u>See</u>

16  Bruckman Decl. ¶ 7 & Ex. B at 14, ECF No. 90.

17     The parties also stipulated to a psychiatric evaluation of each of the Plaintiffs to determine

18  whether any of them suffered emotional damage as a result of the arrests.  Brewer Decl., Ex. E,

19  ECF No. 88.  The evaluations were conducted by Dr. Joanna Berg.  Berg Decl. ¶ 3, ECF No. 89.

20     Berg evaluated Alma on March 8, 2013.  Berg opined that "Alma presented with [sic] no

21  evidence of a clinical disorder that arose from the incident."  Berg Decl. ¶ 7.  She also opined that

22  "Mrs. Hernandez has multiple psychosocial stressors that include her health problems, her sons

23  health and legal problems, her daughter's school functioning, the general family tension, loss of

24  their home and the marital problems.  Yet, on interview and in deposition testimony she denies

25  that any of these stressors affect her significantly.  An average individual would be highly stressed

26  by even one of these issues, yet she denies the normative emotional impact of the very real

27  stresses. These stresses are not related to the incident of July 4, 2010 and they would have

28

United States District Court
Northern District of California

occurred and be ongoing in the absence of the incident."  Berg Decl. ¶¶ 6-7.

Berg evaluated T.H. on March 8, 2013.  Berg Decl. ¶ 9.  Berg opined that "[T.H.] is a youth who does evidence some underlying depressive and anxious features, but these are best explained by the multiple stressors in her life and are not a result of the incident that occurred on July 4, 2010."  Berg Decl. ¶ 11 & Ex. C at 10.  Berg further opined that "[t]here is not sufficient evidence to indicate that Tammy's ongoing emotional functioning, which is consistent with features of depression and anxiety, are related to this incident.  Rather they are related to significant family problems and psychosocial stressors."  Berg Decl. ¶ 12.

Berg evaluated Jose on March 15, 2013.  Berg Decl. ¶ 14.  Berg opined that "Jose did not suffer severe emotional distress as a result of the incident.  His pre-existing conditions were ongoing, and he had a minor exacerbation of feelings of sadness and anxiety, which could be diagnosed as a mild Adjustment Disorder.  This diagnosis is given when someone has an emotional reaction to a stressor, but the reaction is not severe.  Generally, Adjustment Disorders resolve quickly and do not constitute severe emotional distress."  Berg Decl. ¶ 19.

Berg evaluated Scott on March 15, 2013.  Berg Decl. ¶ 20.  Berg opines that "Scott is not depressed as a result of the incident and did not diagnosis an Axis I clinical disorder that would need psychiatric treatment or intervention."  Berg Decl. ¶ 23.

### C.    Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367.

## II.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable

United States District Court
Northern District of California

fact-finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id. at 248.  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact."  Id.  "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint."  Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## III.   DISCUSSION

Defendants the County and Boyd move for summary judgment with respect to each of the

claims Plaintiffs have asserted against them.[3]  They argue that summary judgment is appropriate because the uncontroverted evidence establishes that the arrests were supported by probable cause, Boyd did not use unlawful force in executing the arrests, there is no evidence of discrimination, and the state law tort claims are unsupported by the evidence.  ECF No. 87.

Plaintiffs filed a statement in lieu of an opposition stating that they "are unable to effectively oppose" Defendants' motion and "can only protest the state of the law."  ECF No. 97.

While the Court may not grant Defendants' motion on the basis that it is unopposed, the Court may grant the motion if the evidence on the record is sufficient to support the motion and does not reveal a genuine issue of material fact.  See Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993); see also Fed. R. Civ. P. 56 advisory committee's note ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

### A.      Claims Under 42 U.S.C. § 1983

Jose, Scott, and Josh allege that Boyd violated their Fourth and Fourteenth Amendment rights by (1) depriving them of liberty without due process; (2) discriminating against them based on race; and (3) using excessive force against them.  SAC ¶¶ 53-54.

Boyd moves for summary judgment on this claim, arguing that he is protected from liability under § 1983 by qualified immunity.  Boyd further argues that in the event the Court finds that he is not protected by qualified immunity, Plaintiffs cannot meet their burden to "support a triable issue of fact" with respect to these claims.  ECF No. 87 at 8.

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).

Qualified immunity is an affirmative defense that "shield[s] an officer from personal

---

[3] For this reason, the Court considers only the allegations and facts pertaining to the claims that Plaintiffs have asserted against the County and Boyd for the purpose of resolving this motion.

United States District Court
Northern District of California

liability when an officer reasonably believes that his or her conduct complies with the law."

Pearson v. Callahan, 555 U.S. 223, 244 (2009).  "[I]n resolving a motion for summary judgment

based on qualified immunity, a court must carefully examine the specific factual allegations

against each individual defendant (as viewed in a light most favorable to the plaintiff)."

Cunningham v. Gates, 229 F.3d 1271, 1287 (9th Cir. 2000).

**1.       Deprivation of Liberty without Due Process in Violation of the Fourth Amendment**

Jose, Scott, and Josh allege that Boyd deprived them of liberty without due process in

violation of the Fourth Amendment because Boyd arrested them without probable cause and kept

them in jail for four days even though no charges ultimately were filed against them.  SAC ¶¶ 53-

54, 65-67.

"When a law enforcement officer asserts qualified immunity from liability for Fourth

Amendment violations, the district court must determine whether, in light of clearly established

principles governing the conduct in question, the officer objectively could have believed that his

conduct was lawful."  Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1092 (9th Cir. 1998)

(citation omitted).  An arrest is lawful under the Fourth Amendment when it is supported by

probable cause.  See Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004) ("That a

police officer may arrest a suspect only if he has probable cause to believe a crime has been

committed is a bedrock Fourth Amendment precept.").  "Probable cause exists when under the

totality of circumstances known to the arresting officers, a prudent person would have concluded

that there was a fair probability that [the defendant] had committed a crime."  Grant v. City of

Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002) (citation and internal quotation marks omitted).

Here, the Court concludes that Boyd has qualified immunity with respect to Jose and

Scott's § 1983 claims for deprivation of liberty without due process, because Boyd objectively

could have believed that his arrests of Jose and Scott were lawful.  The undisputed facts show that

the driver of the Corolla called the police department, identified Jose's vehicle to dispatchers as

having been involved in a road rage incident, and told dispatchers that Jose had fired gunshots at

1  his vehicle and that two other men were in Jose's truck at the time that Jose allegedly fired the gun

2  shots.  Boyd received this information via dispatch prior to making the arrests.  Boyd Decl. ¶¶ 2-6;

3  Casalnuovo Decl. ¶¶ 2-4.  Additionally, prior to executing the arrests, City police officers spoke

4  with Alma to confirm that Jose owned the truck that the driver of the Corolla had identified.

5  Casalnuovo Decl. ¶ 6; Alma Dep. at 29, 44-46; T.H. Dep. at 40-41, 45-47.  In light of this

6  evidence, Boyd had ample cause to believe that Jose and Scott had committed a crime.

7  Accordingly, Boyd is entitled to summary judgment on qualified immunity grounds with respect

8  to Jose and Scott's claims for unlawful arrest under the Fourth Amendment.

9      Boyd also is entitled to summary judgment with respect to Josh's claim for unlawful arrest

10  under the Fourth Amendment, because there is no evidence showing that Boyd was involved with

11  Josh's arrest.  See Vance v. Peters, 97 F.3d 987, 991 (9th Cir. 1996) ("Section 1983 creates a

12  cause of action based on personal liability and predicated upon fault; thus, liability does not attach

13  unless the individual defendant caused or participated in a constitutional deprivation.").

14  ### 2.      Excessive Force in Violation of the Fourth Amendment

15      Jose, Scott, and Josh allege that Boyd used excessive force when arresting them.  SAC ¶¶

16  53-55.

17      The "use of excessive force in effecting an arrest is a clearly established violation of the

18  Fourth Amendment[.]"  Id.  "[T]he test for qualified immunity in excessive force cases is the same

19  as the test on the merits."  Cunningham v. Gates, 229 F.3d 1271, 1288 (9th Cir. 2000) (citation

20  omitted).  "Under the Fourth Amendment, police may use only such force as is objectively

21  reasonable under the circumstances."  Id. (citation omitted).  "Determining whether force used in

22  making an arrest is excessive or reasonable requires careful attention to the facts and

23  circumstances of each particular case, including the severity of the crime at issue, whether the

24  suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

25  resisting arrest or attempting to evade arrest by flight."  Id. (citation and internal quotation marks

26  omitted).  This entails a highly factual inquiry that "nearly always requires a jury to sift through

27  disputed factual contentions, and to draw inferences therefrom."  Santos v. Gates, 287 F.3d 846,

28

United States District Court
Northern District of California

853 (9th Cir. 2002).  "Summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly . . . because police misconduct cases almost always turn on a jury's credibility determinations."  Id. (citation omitted).

Boyd argues that he did not use excessive force because Jose and Scott did not "submit[] any evidence that [they] suffered an injury," "neither Jose nor Scott sought medical attention for physical injuries after the arrest," and Dr. Bruckman concluded years after the arrests that "Jose sustained no physical injuries as a result of the incident."  ECF No. 87 at 10.

The Court concludes that, contrary to Boyd's arguments, there is substantial evidence on the record showing that the force that Boyd used during the arrests caused Jose and Scott to suffer pain for days after the arrests, caused cuts to the inside of Scott's mouth and scrapes to his face, caused Jose's face to bleed, made Jose feel like Boyd had "beaten[en] him up," and caused Alma to believe that Boyd had "abused his strength."  See Jose Dep. at I, 88-94, 121, 126-127, 129-132, 137, 139-141, 199-201; Alma Dep. at 65-66, 71-72, 75, 122; T.H. Dep. at 65-55, 68-69.  In light of this evidence, and in light of the absence of any facts showing that Jose and Scott resisted arrest, a reasonable juror could conclude that the force Boyd used when arresting Scott and Jose was excessive.  See Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989) (holding that evidence showing that "handcuffs were put on in an abusive manner and that [the plaintiff] was physically injured" by an arrest is sufficient to raise a genuine issue of material fact with respect to an excessive force claim).  Accordingly, Boyd's motion for summary judgment is denied with respect to Jose and Scott's claims for excessive force.

The Court concludes that Boyd is entitled to summary judgment with respect to Josh's excessive force claim, however, because no evidence has been presented showing that Boyd had any physical contact with Josh.  See Vance v. Peters, 97 F.3d 987, 991 (9th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

/ / /

### 3. Racial Discrimination in Violation of the Fourteenth Amendment

Jose, Scott, and Josh allege that Boyd willfully deprived them of their "right to be free from discrimination based on race, gender or disability" and their "right to equal protection of the law." SAC ¶¶ 54-55. The Court interprets Plaintiffs' equal protection claim as being premised on the racially derogatory statements that Boyd made during the course of Scott and Jose's arrests. See Scott Dep. at 126 (testifying that, as Boyd handcuffed Scott, Boyd told Scott to "get down on the ground, you dirty Mexican"); see Alma Dep. at 56 (testifying that Boyd said "damn Mexicans, now you are going back to your country" during Scott's arrest).

"To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted). "The burden shifting analysis requires the plaintiff to establish a prima facie case that the officer's conduct was motivated by a discriminatory purpose." Monetti v. City of Seattle, 875 F. Supp. 2d 1221, 1229 (W.D. Wash. 2012) (citation omitted). The burden then shifts to the defendants to show that there was no discriminatory effect or that the officers acted no differently because of the discrimination. Id. The plaintiff must then show that the reasons given are merely pretext. Id.

Generally, racially derogatory statements, without more, do not rise to the level of an established constitutional violation under the Fourteenth Amendment. See, e.g., Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) ("[V]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983")); El–Em Band of Pomo Indians of Sulphur Bank Rancheria v. 49th Dist. Agric. Fair Ass'n, 359 F.Supp. 1044, 1046 (N.D. Cal. 1973) (holding that "[p]laintiffs may have a right to be free from" racially derogatory depictions "but this right is one of the many rights which are not guaranteed by the Constitution of the United States"). Racially derogatory comments made by a police officer in the course of an investigatory stop or arrest, however, can give rise to a violation of the arrestee's Fourteenth Amendment rights. The right to be free from such invidious

United States District Court
Northern District of California

14

discrimination by public officials is "well established."  See Monetti v. City of Seattle, 875 F.

Supp. 2d 1221, 1230 (W.D. Wash. 2012) (holding that officer accused of making racially

derogatory comment and using excessive force during investigatory stop was not entitled to

qualified immunity with respect to a discrimination claim under the Fourteenth Amendment

because "the constitutional right to be free from such invidious discrimination is so well

established and so essential to the preservation of our constitutional order that all public officials

must be charged with knowledge of it") (quoting Flores v. Pierce, 617 F.2d 1386, 1392 (9th Cir.

1980)).  As such, Boyd is not entitled to qualified immunity with respect to any discrimination

claims arising out of the racially derogatory comments he made in the course of the arrests.

The evidence on the record sufficiently establishes a prima facie discrimination claim

against Boyd.  This evidence shows that Boyd uttered racially derogatory statements in the course

of Scott and Jose's arrests, which raises the inference of a discriminatory motive, and that Boyd

then purportedly proceeded to use excessive force against Scott and Jose.  See Monetti, 875 F.

Supp at 1230 (holding that evidence of a single derogatory comment made by a police officer

during the course of an investigatory stop involving excessive force is sufficient to establish a

prima facie discrimination claim); see also Cordova v. State Farm Ins. Companies, 124 F.3d 1145,

1149 (9th Cir. 1997) (holding that the defendants' statement that the plaintiff was a "dumb

Mexican" in connection with the discriminatory conduct at issue "can create an inference of

discriminatory motive").  Scott has testified that Boyd called him a "dirty Mexican" after pushing

him forcibly into the ground and causing the inside of his mouth to bleed, and Alma has testified

that she heard Boyd say "damn Mexicans, now you are going back to your country" after Boyd

handcuffed Scott and soon before Boyd knocked Jose onto his knees, twisted his arm, and pushed

his face onto the pavement, causing it to bleed.  See Scott Dep. at 126; Alma Dep. at 56.  Notably,

Boyd does not deny that he made these derogatory statements.  He also does not deny Plaintiffs'

version of the arrests.  As such, the burden then shifts to Boyd to show that his discriminatory

motives did not cause him to treat Plaintiffs less favorably than other suspects.

Boyd has not met his burden to show the absence of a discriminatory effect.  Boyd's only

United States District Court
Northern District of California

argument on this issue is that his comments had "no bearing on the arrest[s]," because the arrests were the result of the crime report he received from dispatch and were not caused by "any discriminatory purpose." ECF No. 87 at 12. Boyd's argument is consistent with the evidence on the record showing that ample probable cause existed to justify the arrests, and it thus refutes any theory that Boyd unlawfully arrested Jose and Scott because of a discriminatory motive. But, Boyd has failed to explain the apparent existence of a connection between his discriminatory motive and his purported physical abuse of Scott and Jose. Indeed, Boyd's racially derogatory statements and his purported use of excessive force were contemporaneous, if not simultaneous. Given the lack of any explanation for this connection, a reasonable juror could conclude that Boyd's use of excessive force was motivated by a desire to discriminate against Jose and Scott on account of their race. Accordingly, Boyd's motion for summary judgment with respect to Jose and Scott's claims must be denied.

The Court concludes, however, that Boyd is entitled to summary judgment with respect to Josh's discrimination claim, as no evidence has been presented to show that Boyd committed any acts that could give rise to a § 1983 claim based on violations of Josh's Fourteenth Amendment rights. See Vance v. Peters, 97 F.3d 987, 991 (9th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

**B.      California Civil Code Section 52.1**

Jose, Scott, and Josh allege that Boyd "interfered" with their rights under the Constitutions of California and the United States "by means of intimidation, coercion, threats and violence." SAC ¶ 22. The Court interprets the claims as being premised on Boyd's alleged violations of Plaintiffs' rights under the Fourth and Fourteenth Amendments, as discussed above.

California Civil Code Section 52.1 provides a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." Jones v. Kmart Corp., 17 Cal.4th 329, 331 (Cal. 1998). Liability under this section, however, "does not extend to all ordinary tort actions

United States District Court
Northern District of California

1    because its provisions are limited to threats, intimidation, or coercion that interferes with a

2    constitutional or statutory right." <u>Venegas v. Cnty. of Los Angeles</u>, 32 Cal. 4th 820, 843 (Cal.

3    2004).

4         When a claim under Section 52.1 is premised on the violation of a right guaranteed by the

5    United States Constitution, courts in the Ninth Circuit look to the elements of the constitutional

6    claim to determine whether the Section 52.1 claim is meritorious. <u>See</u> <u>Cameron v. Craig</u>, 713 F.3d

7    1012, 1022 (9th Cir. 2013) ("[Plaintiff] asserts no California right different from the rights

8    guaranteed under the Fourth Amendment, so the elements of the excessive force claim under §

9    52.1 are the same as under § 1983.")

10        Here, Boyd's summary judgment motion with respect to Jose and Scott's claims for

11   excessive force and discrimination has been denied; accordingly, his motion for summary

12   judgment with respect to Jose and Scott's Section 52.1 claims, which are premised on the same

13   alleged conduct and constitutional deprivations, also must be denied.

14        In contrast, Boyd's motion for summary judgment on Josh's claims for violations of the

15   Fourth and Fourteenth Amendments has been granted; accordingly, his summary judgment motion

16   with respect to Josh's Section 52.1 claim, which is premised on the same alleged conduct and

17   constitutional deprivations, also must be granted.

18        **C.    California Civil Code Section 51.7**

19        Jose, Scott, and Josh allege that Boyd violated their right under California Civil Code

20   Section 51.7 to be free from violence or intimidation by threat of violence on the basis of their

21   race, color, or ancestry.  SAC ¶¶ 25-27.  This claim is premised on allegations that the arrests of

22   Jose, Scott, and Josh and the treatment that each of them received during the arrests were

23   motivated by racial animus and a "desire to get [Plaintiffs] out of the country on account of their

24   race." <u>Id.</u> ¶ 26.

25        Section 51.7 grants the "right to be free from any violence, or intimidation by threat of

26   violence, committed" against "persons or property" based a characteristic such as sex, race, color,

27   religion, ancestry, national origin, disability, medical condition, marital status, or sexual

28

United States District Court
Northern District of California

1   orientation.  Cal. Civ. Code § 51.7(b), (e).

2       The Court concludes that Boyd's motion for summary judgment on Scott and Jose's claim

3   must be denied, because, as discussed above, a genuine issue of material fact exists with respect to

4   whether his alleged use of excessive force against Scott and Jose was motivated by their race or

5   ancestry.  Cf. Gomez v. City of Fremont, 730 F. Supp. 2d 1056, 1069 (N.D. Cal. 2010) (granting

6   summary judgment on Section 51.7 claim because the plaintiff "had only a subjective belief, and

7   not any evidence, that [the defendants] were motived by his ethnicity").

8       On the other hand, the Court concludes that Boyd's motion for summary judgment on

9   Josh's claim must be granted, because no evidence has been presented showing that Boyd

10  committed an act of violence or threatened violence against Josh.

11      **D.      Battery**

12      Jose, Scott, and Josh allege that Boyd used excessive force when arresting them despite

13  their "lack of resistance and complete cooperation" during the arrests.  SAC ¶¶ 29-30.

14      "In order to prevail on a claim of battery against a police officer, the plaintiff bears the

15  burden of proving the officer used unreasonable force."  Munoz v. City of Union City, 16 Cal.

16  Rptr. 3d 521, 539 (Cal. Ct. App. 2004).  "Claims that police officers used excessive force in the

17  course of an arrest, investigatory stop or other seizure of a free citizen are analyzed under the

18  reasonableness standard of the Fourth Amendment to the United States Constitution."  Id. (citation

19  and internal quotation marks omitted).

20      Here, Boyd's motion for summary judgment on Jose and Scott's battery claims fails for the

21  same reasons that his motion for summary judgment on Jose and Scott's § 1983 claims for

22  excessive force fails, as both claims are analyzed under the reasonableness standard of the Fourth

23  Amendment.  Accordingly, Boyd's motion for summary judgment on Jose and Scott's claims is

24  denied.

25      Boyd's claim is granted, however, with respect to Josh's battery claim, as there is no

26  evidence on the record showing that Boyd had any physical contact with Josh or was otherwise

27  involved with Josh's arrest.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**E.       Intentional Infliction of Emotional Distress**

2       Plaintiffs allege that Defendants acted with the intent to inflict severe mental, physical, and

3  emotional distress upon them and that they suffered severe emotional distress because of

4  Defendants' conduct in executing the arrests of Jose, Scott, and Josh.  SAC ¶¶ 33-34.

5       "Under California law, the elements of intentional infliction of emotional distress ("IIED")

6  are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless

7  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

8  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

9  defendant's outrageous conduct."  Sabow v. United States, 93 F.3d 1445, 1454 (9th Cir. 1996)

10  (citation omitted).  "In order to be considered outrageous, the conduct must be so extreme as to

11  exceed all bounds of that usually tolerated in a civilized community."  Tekle v. United States, 511

12  F.3d 839, 855 (9th Cir. 2007) (citation and internal quotation marks omitted).  "Where reasonable

13  persons may differ, the trier of fact is to determine whether the conduct has been sufficiently

14  extreme and outrageous to result in liability."  Id. (citation and internal quotation marks omitted).

15       Boyd moves for summary judgment on these claims on the basis that (1) his "insensitive or

16  rude conduct" does not constitute outrageous conduct; (2) none of the Plaintiffs have introduced

17  evidence showing that they experienced "severe emotional suffering;" and (3) Alma, Scott, and

18  T.H. cannot meet their burden with respect to the element of causation, because Dr. Berg's reports

19  "indicate" that there is no causal connection "between the incident at issue and the mental health

20  of plaintiffs Alma, Scott, and [T.H.]."  ECF No. 87 at 15-17.

21       The Court first concludes that Boyd's motion for summary judgment on the IIED claims

22  brought by Scott and Josh must be granted because there is no evidence on the record showing that

23  either of these Plaintiffs suffered severe emotional distress as a result of Boyd's conduct.

24       In contrast, the Court concludes that a genuine issue of material fact exists with respect to

25  the IIED claims asserted by Alma, T.H., and Jose.  The question of whether these Plaintiffs can

26  ultimately prevail on these claims depends on the credibility of the Plaintiffs and of Dr. Berg, the

27  doctor who conducted their mental evaluations.  Alma, T.H., and Jose have testified that that they

28

suffered emotional distress during the course of the arrests and following the arrests. Jose Dep. at 120-124, 127, 146-47, 168; Alma Dep. at 49-51,71-72, 110, 113, 133; T.H. Dep. at 37-38, 47- 49, 51, 57- 59, 61, 71, 75-77. Dr. Berg also states in her reports that Alma, T.H., and Jose experienced anxiety and depressive symptoms following the arrests. Berg Decl., Ex. B-D. Dr. Berg's ultimate conclusion is that the events that took place during the arrests are not the proximate cause of the mental health issues that these Plaintiffs experienced after the arrests, because Plaintiffs were and continue to be subject to a number of stressors that are wholly unrelated to the arrests. Notwithstanding Dr. Berg's opinion testimony, a reasonable jury could find for Alma, T.H., and Jose on their IIED claims, because a reasonable jury could find Berg's opinion testimony to be less credible than Plaintiffs' own testimony as to the nature, extent, and causes of their emotional distress.

Boyd argues that Plaintiffs' IIED claims necessarily fail because mere insulting language, without more, does not constitute outrageous conduct. ECF No. 87 at 16 (citing Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir. 1991)). But here, Boyd did not make the racially derogatory comments at issue in a vacuum. Instead, he made them while he was in a position of power with respect to Plaintiffs, while he allegedly used excessive force against Jose and Scott, and while he was in front of Plaintiffs' home and within sight and hearing range of Plaintiffs' neighbors. As such, a reasonable juror could find that Boyd's conduct was outrageous. See Tekle v. United States, 511 F.3d 839, 856 (9th Cir. 2007) (reversing grant of summary judgment on claim for intentional infliction of emotional distress because "reasonable minds could differ as to whether the conduct alleged here by [the plaintiff] was sufficiently extreme and outrageous" in part because the plaintiff "testified that an officer made disparaging remarks about Ethiopia" after the officer arrested the plaintiff's father); Alcorn v. Anbro Engineering, Inc., 86 Cal. Rptr. 88, 89 (Cal. 1970) (holding that a racial insult is an aggravating factor in finding outrageous conduct in situations where the defendant "stand[s] in a position or relation of authority over plaintiff"); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1466 (9th Cir. 1994) ("[W]here there is public humiliation it is much more likely that the [IIED] action will lie.").

1    Accordingly, Boyd's summary judgment motion is denied with respect to the IIED claims

2    brought by Alma, T.H., and Jose.

3    **F.    False Arrest or Imprisonment**

4    Plaintiffs allege that the arrests of Jose, Scott, and Josh were unlawful because Defendants

5    did not have an arrest warrant or probable cause to arrest them.  SAC ¶¶ 64-67.

6    Boyd argues that he is entitled to summary judgment on this claim because officers cannot

7    be held civilly liable for false imprisonment where the officer "had reasonable cause to believe the

8    arrest was lawful."  Mot. at 17 (citing Cal. Penal Code § 847(b)).

9    Here, as discussed above, the Court has concluded that Boyd had ample probable cause to

10   arrest Scott and Jose.  Because these arrests are lawful, Boyd cannot be held liable for false

11   imprisonment with respect to Jose and Scott.

12   Additionally, because there is no evidence on the record showing that Boyd was involved

13   in Josh's arrest, Josh's claim for false imprisonment against Boyd fails.

14   Accordingly, Boyd's motion for summary judgment is GRANTED with respect to all

15   claims for false imprisonment.

16   **G.    Conspiracy**

17   Jose, Scott, and Josh allege that Defendants conspired (1) to have Boyd use excessive force

18   when arresting Scott and Jose in order to provoke them to resist arrest, (2) to prepare police reports

19   that would "cover up the unnecessary force used by Boyd;" (3) to wrongfully arrest Jose, Scott,

20   and Josh; and to discriminate against Plaintiffs based on their race.  SAC ¶¶ 68-73.

21   Under California law, to prevail on a claim for conspiracy, the plaintiff must show "(1) the

22   formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and

23   (3) the damage resulting from such act or acts."  Wasco Products, Inc. v. Southwall Technologies,

24   Inc., 435 F.3d 989, 992 (9th Cir. 2006) (citation omitted).   In the context of claims under § 1983,

25   a plaintiff alleging a conspiracy "must provide material facts that show an agreement among the

26   alleged conspirators to deprive the party of his or her civil rights."  Margolis v. Ryan, 140 F.3d

27   850, 853 (9th Cir. 1998) (citations omitted).

28

United States District Court
Northern District of California

1    Here, there is no evidence on the record showing that an agreement of any sort existed

2 between Boyd and the other defendants. For this reason alone, Boyd's motion for summary

3 judgment on this claim must be granted.

4    **H.    Immunity under California Government Code Section 815.2**

5    Plaintiffs allege that the County is liable under the doctrine of respondeat superior with

6 respect to the claims they have asserted against Boyd for battery, intentional infliction of

7 emotional distress, and violations of Sections 52.1 and 51.7. SAC ¶¶ 50-52.

8    The County moves for summary judgment on this claim on the ground that "because Boyd

9 is not individually liable for any state law claim, the County is not liable." ECF No. 87 at 18.

10    Section 815.2 provides that "[a] public entity is liable for injury proximately caused by an

11 act or omission of an employee of the public entity within the scope of his employment if the act

12 or omission would, apart from this section, have given rise to a cause of action against that

13 employee or his personal representative." Cal. Gov't Code § 815.2(a).

14    Here, the County has provided no evidence to show that Boyd acted outside of the scope of

15 his employment with respect to the claims at issue. For this reason, the County can be held liable

16 under Section 815.2 for any claim for which Boyd can be held liable. Accordingly, the County's

17 motion for summary judgment on the respondeat superior claim is granted with respect to any

18 claim on which Boyd has been granted summary judgment, but it is denied with respect to any

19 claim on which Boyd has been denied summary judgment.

20 **IV.    CONCLUSION**

21    Boyd and the County's motion for summary judgment is GRANTED IN PART AND

22 DENIED IN PART as follows:

23    1.    Boyd and the County's motion for summary judgment with respect to Plaintiffs' §

24        1983 claim for violations of their Fourth Amendment rights in connection with a

25        wrongful arrest is GRANTED.

26    2.    Boyd and the County's motion for summary judgment with respect to Scott and

27        Jose's § 1983 claim for violations of their Fourteenth Amendment rights in

28

United States District Court
Northern District of California

connection with Boyd's racial derogatory comments is DENIED, but Boyd's motion with respect to Josh's claim § 1983 equal protection claim is GRANTED.

3. Boyd and the County's motion for summary judgment with respect to Scott and Jose's §  1983 claim for violations of their Fourth Amendment rights in connection with the use of excessive force is DENIED, but it is GRANTED with respect to Josh's excessive force claim.

4. Boyd and the County's motion for summary judgment with respect to Jose and Scott's claim under California Civil Code Section 52.1 is DENIED, but it is GRANTED with respect to Josh's § 52.1 claim.

5. Boyd and the County's motion for summary judgment with respect to Scott and Jose's claim under California Civil Code Section 51.7 is DENIED, but it is GRANTED with respect to Josh's § 51.7 claim.

6. Boyd and the County's motion for summary judgment with respect to Scott and Jose's battery claim is DENIED, but it is GRANTED with respect to Josh's battery claim.

7. Boyd and the County's motion for summary judgment with respect to Alma, T.H., and Jose's claims for IIED is DENIED, but it is GRANTED with respect to Josh and Scott's IIED claims.

8. Boyd and the County's motion for summary judgment with respect to Plaintiffs' claims for false arrest is GRANTED.

9. Boyd and the County's motion for summary judgment with respect to Plaintiffs' conspiracy claim is GRANTED.

10. The County's summary judgment motion with respect to Plaintiffs' respondeat superior claim is GRANTED with respect to each of the claims on which the Court

/ / /

/ / /

/ / /

23

has granted summary judgment to Boyd, and it is otherwise DENIED, as itemized above.

**IT IS SO ORDERED**.

Dated:  November 14, 2013



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California